IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
SOUTHERN DIVISION

| | | |
|---|---|---|
| NY'DRIA WILLIAMS | § | PLAINTIFF |
| | § | |
| v. | § | Civil No. 1:24-cv-378-HSO-BWR |
| | § | |
| CVS PHARMACY, INC. and | § | |
| SUPERVISOR JOHN DOE | § | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER GRANTING DEFENDANT CVS PHARMACY, INC.'S MOTION [7] TO STAY AND TO COMPEL ARBITRATION**

Defendant CVS Pharmacy, Inc.'s Motion [7] to Stay and to Compel Arbitration asks this Court to compel Plaintiff Ny'Dria Williams to arbitrate her claims against Defendant CVS Pharmacy, Inc. No response has been filed in opposition to the Motion [7]. The Court finds that the Motion [7] to Stay and to Compel Arbitration should be granted, that Plaintiff Ny'Dria Williams should be ordered to submit her claims to arbitration, and that this case should be stayed and administratively closed pending the resolution of arbitration.

I. BACKGROUND

According to the Complaint [1], Plaintiff Ny'Dria Williams ("Plaintiff"), who has an unspecified physical disability, began working for Defendant CVS Pharmacy, Inc. ("CVS") in November 2022, and was promoted to the position of full-time shift supervisor in May 2023. Compl. [1] at 2. Due to her disability, on April 28, 2024, Plaintiff took a medical leave of absence. *Id.* She returned to work on May 20, 2024, but CVS and Defendant Supervisor John Doe allegedly retaliated against her for taking a medical leave of absence by reducing her work hours. *Id.* at 3. Plaintiff

asserts that CVS did not offer her any accommodations, despite its policy on offering reasonable accommodations for employees with disabilities. *Id.*

Plaintiff's employment contract with CVS contained an Arbitration Agreement, the terms of which state that,

> **1.** **Mutual Agreement to Arbitrate Claims.** The employee named below will be referred to here as "Employee," "You" or "Your". CVS Pharmacy, Inc., including its affiliates, successors, subsidiaries and/or parent companies will be referred to here as "CVS" or "Company". Under this Agreement, You and CVS agree that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum, except as otherwise provided in this Agreement.
>
> **2.** **Claims Covered by this Agreement.** Except as otherwise stated in this Agreement, Covered Claims are any and all claims, disputes or controversies that CVS may have, now or in the future, against You or that You may have, now or in the future, against CVS or one of its employees or agents, arising out of or related to Your employment with CVS or the termination of Your employment. Covered Claims include but are not limited to disputes regarding wages and other forms of compensation, hours of work, meal and rest break periods, seating, expense reimbursement, leaves of absence, harassment, discrimination, retaliation and termination arising under the Civil Rights Act of 1964, Americans With Disabilities Act, Age Discrimination in Employment Act, Family Medical Leave Act, Fair Labor Standards Act, Employee Retirement Income Security Act ("ERISA"), Genetic Information Non-Discrimination Act, and other federal, state and local statutes, regulations and other legal authorities relating to employment. Covered Claims also include disputes arising out of or relating to the validity, enforceability or breach of this Agreement, except as provided in paragraph 6, below, regarding the Class Action Waiver.

Ex. [7-1] at 4 (emphasis in original). Under the terms of the Arbitration Agreement, "[t]he arbitration will be administered by the American Arbitration Association ('AAA') and will be conducted in accordance with the Employment Arbitration Rules and Mediation Procedures of the AAA ('AAA Rules') then in effect." *Id.* Plaintiff

was afforded an opportunity to opt out of the Arbitration Agreement, but she did not do so.  *See id.* at 3.

After Plaintiff exhausted her administrative remedies with the Equal Employment Opportunity Commission and received her Notice of Right to Sue, she filed her Complaint [1] in this Court on December 13, 2024.  Compl. [1] at 3-4.  The Complaint [1] advances employment discrimination and retaliation claims under Title I of the Americans with Disabilities Act, 42 U.S.C. § 12111 et seq., and Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq.  *Id.* at 4-6.  On March 7, 2025, CVS filed the instant Motion [7] to Stay and to Compel Arbitration, *see* Mot. [7],  arguing that Plaintiff's employment contract contains a valid arbitration clause, and that because the Arbitration Agreement contains a delegation clause, the Court need only decide if a valid contract was formed, as all other questions relating to the Arbitration Agreement's enforceability are for the arbitrator,  Mem. [8] at 4-13; *see also* Ex. [7-1] at 4-5.  Plaintiff has not responded to the Motion [7], and the time for doing so has passed.  *See* L.U. Civ. R. 7(b)(4).

## II.  DISCUSSION

A. <u>Relevant Law</u>

The Federal Arbitration Act ("FAA"), 9 U.S.C. § 1, et seq., provides that a written agreement to arbitrate in a contract involving interstate commerce "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Section 2 of the FAA creates "a body of federal substantive law of arbitrability, applicable to any

3

arbitration agreement within the coverage of the Act." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). The FAA "establishes a national policy favoring arbitration when the parties contract for that mode of dispute resolution." *Preston v. Ferrer*, 552 U.S. 346, 349 (2008). Arbitration agreements must be enforced "according to their terms." *Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). A court "shall direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (citing 9 U.S.C. §§ 3, 4).

In considering whether to compel arbitration under the FAA, courts generally follow a two-step analysis. *Tittle v. Enron Corp.*, 463 F.3d 410, 418 (5th Cir. 2006). First, a court decides whether the parties agreed to arbitrate the dispute at issue. *Id.* To answer this question, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Id.* (quotations omitted). Second, a court determines whether legal constraints external to the agreement foreclose arbitration. *Id.*

"Under the FAA, parties are free to delegate questions to an arbitrator, including questions regarding the validity and scope of the arbitration provision itself." *Arnold v. Homeaway, Inc.*, 890 F.3d 546, 551 (5th Cir. 2018); *see also Rent-A-Ctr.*, 561 U.S. at 68-69 ("We have recognized that parties can agree to arbitrate 'gateway' questions of 'arbitrability,' such as whether the parties have agreed to arbitrate or whether their agreement covers a particular controversy."). If a

4

delegation clause exists, "absent a challenge to the delegation clause itself, [the Court] will consider that clause to be valid and compel arbitration," *Edwards v. Doordash, Inc.*, 888 F.3d 738, 744 (5th Cir. 2018), "leaving any challenge to the validity of the Agreement as a whole for the arbitrator[,]" *Rent-A-Ctr.*, 561 U.S. at 72. However, the Court "may not assume that parties have agreed to arbitrate threshold questions absent clear and unmistakable evidence of their intent to do so." *Arnold*, 890 F.3d at 551-52.

Finally, Section 3 of the FAA "requires the court, 'on application of one of the parties,' to stay the action if it involves an 'issue referable to arbitration under an agreement in writing.'" *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630 (2009) (quoting 9 U.S.C. § 3).

B.   Analysis

CVS seeks to enforce the delegation provision within the Arbitration Agreement. Mem. [8] at 10-12. When a party attempts to enforce a delegation clause, a court looks only "to see if an agreement to arbitrate was formed, [and] then determine[s] if it contains a delegation clause." *Edwards*, 888 F.3d at 744. If an agreement was formed and a valid delegation clause exists, the analysis ends, and a court is to compel arbitration. *See id.* at 743-46.

The formation of an arbitration agreement is governed by state law. *Carey v. 24 Hour Fitness, USA, Inc.*, 669 F.3d 202, 208 n.2 (5th Cir. 2012). The elements of contract formation under Mississippi law—mutual assent, two or more contracting parties, consideration, legal capacity, the absence of any legal prohibition

5

precluding contract formation, and specificity of terms—are easily satisfied here. *See GGNSC Batesville, LLC v. Johnson*, 109 So. 3d 562, 565 (Miss. 2013) (listing the elements of contract formation under Mississippi law).

There are at a minimum two parties to the arbitration provision, Plaintiff and CVS. *See* Ex. [7-1] at 5. Plaintiff's signature evidences her acceptance of CVS's offer, and thus, mutual assent. *See id.* The promise of each party to arbitrate a potential claim satisfies the consideration requirement, *see Covenant Health & Rehab. of Picayune, LP v. Lumpkin ex rel. Lumpkin*, 23 So. 3d 1092, 1096-97 (Miss. Ct. App. 2009), and the Arbitration Agreement sufficiently defines its material terms and how the arbitration is to be conducted, *see* Ex. [7-1] at 4-5. None of the parties have argued or produced evidence showing any incapacity to contract. *See Durant Healthcare, LLC v. Garrette*, 362 So. 3d 64, 72 (Miss. Ct. App. 2022), *reh'g denied* (Apr. 4, 2023), *cert. denied*, 365 So. 3d 982 (Miss. 2023) ("The law presumes that a person is sane and mentally capable of entering into a contract." (citing *Frierson v. Delta Outdoor Inc.*, 794 So. 2d 220, 224 (Miss. 2001)). Finally, there is no legal prohibition on arbitration agreements. *See Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 650 (2022) ("[T]he FAA preempts any state rule discriminating on its face against arbitration—for example, a law prohibiting outright the arbitration of a particular type of claim." (quotations omitted)).

Having found that an arbitration agreement was formed under Mississippi law, the Court must look to see whether a delegation clause exists. *See Edwards*, 888 F.3d at 744. Here, the Arbitration Agreement states that "You and CVS agree

that any dispute between You and CVS that is covered by this Agreement ("Covered Claims") will be decided by a single arbitrator through final and binding arbitration only and will not be decided by a court or jury or any other forum," and that "Covered Claims also include disputes arising out of or relating to the validity, enforcement or breach of this agreement . . . ." Ex. [7-1] at 4.  This evidences a clear intent to delegate any question as to the enforceability of the agreement to an arbitrator.  *See Bowles v. OneMain Fin. Grp., L.L.C.*, 954 F.3d 722, 725, 728 (5th Cir. 2020) (finding that a clause which states that "any legal dispute . . . arising out of, relating to, or concerning the validity, enforceability or breach of this Agreement, shall be resolved by final and binding arbitration" constitutes a delegation clause "that sends all enforcement challenges to an arbitrator" (omissions in original)).

Moreover, the Arbitration Agreement incorporates the Employment Arbitration Rules and Mediation Procedures of the American Arbitration Association ("AAA Rules").  *See* Ex. [7-1] at 4.  Rule 6a of the AAA Rules states that "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement."  Emp. Arb. Rules of the Am. Arb. Ass'n. at 12.  The Fifth Circuit has held "that the express adoption of these rules presents clear and unmistakable evidence that the parties agreed to arbitrate arbitrability."  *Petrofac, Inc. v. DynMcDermott Petroleum Operations Co.*, 687 F.3d 671, 675 (5th Cir. 2012).

Because "there is an agreement to arbitrate with a delegation clause, . . . absent a challenge to the delegation clause itself, [the Court] will consider that

7

clause to be valid and compel arbitration." *Edwards*, 888 F.3d at 744. As Plaintiff has not filed any response in opposition to CVS's Motion [7], the Court will stay this case and compel arbitration. *See Smith v. Spizzirri*, 601 U.S. 472, 476 (2024) (holding that where a court compels arbitration, the "plain statutory text [of the FAA] requires a court to stay the proceeding"). CVS's Motion [7] to Stay and to Compel Arbitration should be granted.

### III.  CONCLUSION

**IT IS, THEREFORE, ORDERED AND ADJUDGED** that, Defendant CVS Pharmacy, Inc.'s Motion [7] to Stay and to Compel Arbitration is **GRANTED**, and Plaintiff Ny'Dria Williams is **ORDERED** to submit her claims against Defendant CVS Pharmacy, Inc. to arbitration.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, this case is **STAYED and ADMINISTRATIVELY CLOSED** for statistical purposes pending the outcome of the arbitration between Plaintiff Ny'Dria Williams and Defendant CVS Pharmacy, Inc.

**IT IS, FURTHER, ORDERED AND ADJUDGED** that, the parties shall move to lift the stay and reinstate this case to the active docket within 30 days after the conclusion of the arbitration.

**SO ORDERED AND ADJUDGED**, this the 15th day of April, 2025.

*s/ Halil Suleyman Ozerden*
HALIL SULEYMAN OZERDEN
CHIEF UNITED STATES DISTRICT JUDGE